UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARIUS MITCHELL                                          CIVIL ACTION

VERSUS                                                        NO. 13-6467

SHERIFF MARLIN GUSMAN ET AL.                    SECTION "B" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Larius Mitchell, was a prisoner incarcerated in the Orleans Parish Prison system ("OPP"). He is now being held in the Dixon Correctional Institute.[1] He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman. Mitchell alleges that while incarcerated in OPP, he was subjected to various unconstitutional conditions of confinement. He seeks punitive and compensatory damages. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On February 6, 2014, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Tim Richardson and Charlin Fisher, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

---

[1]On April 7, 2014, plaintiff advised the court that he is now incarcerated in the Dixon Correctional Institute in Jackson, Louisiana. Record Doc. No. 18.

## THE RECORD

Mitchell testified that he was incarcerated in OPP for about nine months, commencing when he was arrested on April 16, 2013, on outstanding warrants and a marijuana charge. He stated that he was convicted of possession of marijuana on January 15, 2014, and is currently serving a five-year prison sentence.

During his OPP incarceration, he was held in both the tents facility and the old prison building within the OPP complex. Asked to describe the conditions of his confinement upon which he bases his claims in this case, Mitchell testified that on or about August 8, 2013, a pipe leak occurred in the bathroom of Tent 3 that resulted in "black stuff all over the floor" that contained "leaches" or insects of some kind, which he described as "nasty." He said that near the "sink where we wash our hands, in front of it was just like black soot, like mud." He testified that the leak was repaired by jail personnel about a month after it started, but that during the month before the repair occurred, the tier representatives (inmates other than himself) would periodically clean up the mess made by the leak with bleach and water, but the mess would appear again within a day or two because of the leak, and they would have to clean it again.

Mitchell testified that he was also exposed to an inmate who was infected with HIV when the infected inmate became involved in a fight with another inmate (not Mitchell) and "blood was everywhere." He stated that he was not involved in the fight,

and the blood was cleaned up about five or ten minutes later by the tier represents. Mitchell said he did not clean up the blood himself and he did not get any blood on his person in this incident. He also testified that on a different occasion another inmate named Travis was in a separate fight which Mitchell "broke up." Mitchell said that he got some blood on himself in this second fight, but he said he has not become HIV positive and did not become ill as a result of this fight.

Mitchell confirmed that he had received the medical records I ordered defense counsel to provide to him and the court. Record Doc. Nos. 6 and 13. Although the medical records indicate that he has epilepsy for which he has received medication while in OPP and which cause occasional convulsions, when asked if he suffers from epilepsy, Mitchell replied "not that I know of . . . I caught a seizure in here" and that he had a separate seizure before his arrest.

As to his claim that he received inadequate outdoor exercise during his nine months of incarceration at OPP, Mitchell testified that "we might have went outside five times." He stated that he receives no outdoors recreation opportunities, though he acknowledged that "two times we played basketball with slippers on, so it's not really a fun game . . . ."

Mitchell also claimed that during a recent two-week period spent in the old building at OPP, he has had to "mop the ceiling" of his cell because condensation forms

on the ceiling causing water drops to fall on him and his belongings. "If you're in the top bunk, everything at the top is going to get wet" unless it is mopped, because of condensation from the nearby shower, he said. Mitchell testified he has suffered no injuries from this condensation because "I clean it up every day." He stated that during the past week he had "gotten real sick" with a cold, causing his "body to shut down on me" as a result of the condensation and changes in the temperature in the old jail. He testified that his cold lasted about four days, he took some medicine for it and it went away.

Mitchell said, "The condition of this place is not up to par . . . . They don't care how they treat you or how they deal with you. . . You're on your own when you're in here." He alleged that the ceiling and the toilets leaked in Tent 4, resulting in "the whole floor" getting wet almost every other day, especially when it rained . . . ." He complained that "I don't know where you got to work [like this], to be able to just lay down in your bed and be comfortable." He repeated that he should not have to work so much with mopping and cleaning in the jail just to be comfortable.

On cross-examination, Mitchell confirmed that he sued Sheriff Gusman as the only defendant in this case because the sheriff is generally responsible for overall supervision of conditions at OPP. He confirmed that he has never spoken to or had any personal interaction with Sheriff Gusman and that the sheriff had not responded to his complaints

or been directly involved in causing or addressing any of the conditions about which he complained.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the

Spears hearing, fails to state a cognizable Section 1983 claim of violation of constitutional rights, even under the broadest reading.[2]

## II.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in OPP.  Mitchell was both a pretrial detainee and a convicted prisoner during the time period about which he complains.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Mitchell's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise

9

to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Mitchell's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Mitchell conceded in his testimony that he has suffered no physical injury or illness (other than a four-day common cold) as a result of the allegedly unsanitary conditions or limited outdoors exercise. Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with

comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Mitchell's allegations about ceiling condensation, dirty conditions or faulty plumbing at the jail fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook,

376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Mitchell do <u>not</u> rise to the level of a constitutional violation.  The conditions he experienced in OPP were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement.  For all of the foregoing reasons, plaintiff's complaints in this case about the conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

Mitchell also alleges that he has not received sufficient outdoor exercise or recreation during his imprisonment in OPP.  He complains that he during his nine months of incarceration at OPP, "we might have went outside five times."  He stated that he received no outside recreational opportunities, though he acknowledged that "two times we played basketball with slippers on, so it's not really a fun game . . . ."

The Fifth Circuit "has held that deprivation of exercise may constitute an impairment of health, which is actionable under the Eighth Amendment, and that the absence of outdoor exercise opportunities may constitute an Eighth Amendment violation."  Hewitt v. Henderson, 271 F. App'x 426, 428 (5th Cir. 2008) (citations omitted).  "While neither the Fifth Circuit nor the United States Supreme Court has ever specifically held that inmates enjoy an absolute right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an extended deprivation of exercise opportunities might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case."  Doolittle v. Holmes, No. 06-986-C, 2010 WL 22552, at *4 (M.D. La.

Jan. 4, 2010) (citing Hewitt, 271 F. App'x at 428; Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986); McGruder v. Phelps, 609 F.2d 1023 (5th Cir. 1979)) (emphasis in original).

However, it is clear that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing Stewart v. Winter, 669 F.2d 328, 336 n.19 (5th Cir. 1982); Miller v. Carson, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); accord Sampson v. Corrs. Corp., No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991); Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988)). To succeed on a claim under Section 1983 for lack of exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved." Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir.), amended in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982); accord Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986).

Plaintiff must also allege an actual injury caused by defendants' acts. See Winding v. Sparkman, 423 F. App'x 473, 474 (5th Cir. 2011) (citing Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999)) (failure-to-protect claim that does not allege any resulting injury does not state an Eighth Amendment violation); Lawson v. Stevens, 62

F.3d 394, 1995 WL 450100, at *1 (5th Cir. 1995) (citing Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992)) (prisoner who "concedes that he was not harmed by the leg irons" with which he was shackled failed to state Eighth Amendment violation); Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) (dismissal was proper when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and plaintiff did not allege constitutional harm); Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 602 (5th Cir. 1988) (Section 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); Jefferson v. City of Hazelhurst, 936 F. Supp. 382, 386 (S.D. Miss. 1995) ("To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead . . . that there exists a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.").

Plaintiff has failed to establish any constitutional violation related to his outdoor exercise opportunities.  Mitchell's own testimony establishes that he was given time for some outdoor exercise.  His allegation that he could not really have "fun" while playing basketball in slippers has no constitutional significance.  See Gates v. Cook, 376 F.3d 323, 344 (5th Cir. 2004) (Although plaintiff argued that "the flip-flops make it difficult

or impossible to exercise vigorously[,] . . . there is no support for the proposition that exercising in flip-flops constitutes cruel and unusual punishment.").

Moreover, Mitchell has presented nothing indicating that the restriction on his outdoor exercise caused any serious health hazard. His medical records reflect no such deleterious health effect. Mitchell merely speculates that he would have benefitted from more outdoor exercise. This speculation is insufficient to establish either a substantial risk of serious harm or any actual injury. See Haralson v. Campuzano, 356 F. App'x 692, 697 (5th Cir. 2009) (inmate who was denied out-of-cell exercise for seven months while in the prison infirmary failed to raise a genuine issue of material fact as to whether he suffered a serious injury sufficient to constitute an Eighth Amendment violation); Hernandez v. Velasquez, 522 F.3d 556, 561 (5th Cir. 2008) (Assuming the evidence created a fact issue whether plaintiff suffered from muscle atrophy, stiffness, loss of range of motion, and depression as a result of lack of out-of-cell exercise for 13 months, "there is nonetheless no indication these conditions posed a substantial risk of serious harm. The district court properly concluded there was no genuine issue as to whether Hernandez suffered a 'serious illness or injury' sufficient to constitute an Eighth Amendment violation."). Plaintiff has not established that the restriction on his outdoors recreation caused any physical injury or violation of his constitutional rights of any kind as a result of his alleged lack of outdoor exercise. This claim must be dismissed.

17

III.   <u>NO PHYSICAL INJURY</u>

Mitchell's only claims for relief are his requests for monetary compensation. Record Doc. No. 1 (Complaint at ¶ V).  This claim is deficient under Section 1983 because Mitchell testified that he suffered no "physical injury" sufficient to support his claim for monetary damages.  Specifically, the Prison Litigation Reform Act of 1996 includes the foll owing requirement in 42 U.S.C. § 1997e(e):  "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury." (Emphasis added). Mitchell complains of discomfort and anxiety concerning his exposure to the conditions about which he complains, but he does not allege physical injuries of any kind as a result.

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible harm, such as has been alleged by Mitchell in this case.  <u>Hutchins v. McDaniels</u>, 512 F.3d 193, 196 (5th Cir. 2007); <u>Geiger v. Jowers</u>, 404 F.3d 371, 374-75 (5th Cir. 2005); <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001).  The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'"  <u>Alexander v. Tippah County</u>, 351 F.3d 626, 631 (5th Cir. 2003) (citing <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999) (quoting <u>Siglar</u>, 112 F.3d at 193);

accord <u>Mayes v. Travis State Jail</u>, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008).   Thus, in <u>Alexander</u>, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting.  <u>Id.</u>  Similarly, in <u>Siglar</u>, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury.  <u>Siglar</u>, 112 F.3d at 193.

In this case, Mitchell admittedly suffered <u>no</u> physical injuries of any kind, except for a four-day common cold.  As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the humiliation or other intangible injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, <u>Hutchins</u>, 512 F.3d at 197-98, Mitchell has shown no constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages."  <u>Allen v. Stalder</u>, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003)).  Thus, plaintiff's complaint must be dismissed in this regard.

IV.   <u>NO LIABILITY OF THE SHERIFF</u>

Mitchell testified that he sued Sheriff Gusman as the only defendant in this case because the sheriff is responsible for general supervision of OPP.  He confirmed that he had never spoken with or had any personal interaction with Sheriff Gusman, and he makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corrections Corp.</u>, 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981); <u>accord</u> <u>Cox</u>, 281 F. App'x at 391 ; <u>Kohler</u>, 470 F.3d at 1115. "It is facially evident that this test

cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Mitchell must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate

indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Mitchell must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Mitchell's complaint against Sheriff Gusman is wholly conclusory and is based on conditions that do not rise to the level of any constitutional violation. Under these circumstances, plaintiff states no cognizable Section 1983 cause of action against the sheriff, and all claims against him must be dismissed as legally frivolous.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ____2nd____ day of May, 2014.

_____
        JOSEPH C. WILKINSON, JR.
        UNITED STATES MAGISTRATE JUDGE\

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.